## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 1 of 3)

**LENDER** (called "We", "Us", "Our")
BENEFICIAL MORTGAGE CO. OF RHODE ISLAND
1276 BALD HILL ROAD
UNIT 16
WARWICK RI 02886

**EXHIBIT A**

**BORROWERS** (called "You", "Your")    **LOAN NO:**    721700-615964  Ce(6207
SUFRAN, MIGUEL
SS#      6096
103 PARADE ST
PROVIDENCE RI 02909

| DATE OF LOAN | FIRST PAYMENT DUE DATE | OTHERS SAME DAY OF EACH MONTH | FINAL PAYMENT DUE DATE | CONTRACT RATE (per year) |
|---|---|---|---|---|
| 03/02/2005 | 04/02/2005 | | 03/02/2035 | 8.290 % |

| AMOUNT FINANCED | PRINCIPAL | | OFFICIAL FEES |
|---|---|---|---|
| $ 322,998.64 | $ 334,713.62 | | $ 65.00 |
| | DISCOUNT FEE/POINTS $ .00 | | |

| LIFE INS PREMIUM | DISABILITY INS PREMIUM | IUI PREMIUM | |
|---|---|---|---|
| $ NONE | $ NONE | $ NONE | |

| RELI INS PREMIUM | | | ORIGINATION FEE/POINTS |
|---|---|---|---|
| $ NONE | | | $ 11,714.98 |

| FIRST INSTALLMENT | MONTHLY INSTALLMENT | | TERM PERIOD |
|---|---|---|---|
| $ 2,524.02 | $ 2,524.02 | | 360 |
| | | | PREPAYMENT PENALTY: YES |

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.

---

REQUIRED INSURANCE. You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:

YES    Title insurance on real estate security.
YES    Hazard insurance on real estate security.

You may obtain any required insurance from anyone you choose and may assign any other policy of insurance you own to cover the security for this loan.
(See "Security" paragraph above for description of security to be insured.)

**NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.**

11-18-02 RE SI
1ST MTG W/PPP



*S44D63D4DC94CEA9000RIB652510**SUFRAN            *            ORIGINAL    RIB65251

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 2 of 3)

PAYMENT. In return for your loan described below, you agree to pay us the Principal and Interest, computed at the Contract Rate (as stated on page one), and any monthly insurance premium if elected. Principal is Amount Financed, plus Points. The term Points means the sum of the Origination Fee (Points) and the Discount Fee (Points) shown on page one. You shall pay us monthly payments, at our business address or other address given you. If more than one Borrower is named on page one, we may enforce this Contract against all, or any Borrowers, but not in a combined amount greater than the amount owed. Payment are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance. For any past due amounts, payments will be applied to the most delinquent monthly installment first, in the same order shown above, until all past due monthly installments are paid in full. For late charge purposes, as long as you make a full monthly installment any month, no late charge will be assessed for that month.

ADJUSTMENT TO CONTRACT RATE. The Contract Rate, as shown on page one, will be decreased by one quarter of one percent (.25) beginning with the thirteenth (13th) month after every twelve (12) consecutive month period where all payments were made in full within 30 days of their due date. Up to maximum of twelve (12) Contract Rate reductions are available during the term of the loan. For each Contract Rate reduction, the monthly payment will be reduced accordingly. Notwithstanding anything to the contrary in this paragraph, you will not receive any Contract Rate reductions or the reduced monthly payment after four periods of delinquency. A "period of delinquency" begins when you fail to make a payment in full within 30 days of the due date and ends when you have no payments that are outstanding for more than 30 days past their due date.

DATE ON WHICH INTEREST BEGINS. If you do not cancel this loan, the date on which Interest begins, payment dates, and effective date of insurance purchased are postponed by the number of days from this contract's date to date you receive this loan.

PAY-OUTS. You agree to pay-outs of Amount Financed as shown on Truth-In-Lending disclosure form. If pay-outs change because loan closing is delayed, (a) you shall pay additional amounts due at closing, or (b) your cash or check will be reduced to cover additional pay-outs.

PREPAYMENT. Subject to the Prepayment Penalty described below, you may prepay any or all of your loan at any time. In any event, if you fully pay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you prepay before the final due date, Points are fully earned when this loan is made and you will not receive a refund of that part of the Finance Charge consisting of Points.

PREPAYMENT PENALTY. If "YES" is printed in the Prepayment Penalty box on page one of this Agreement, you agree to the following penalty. If you prepay in full within twelve (12) months of the date of this loan shown on page one, you agree to pay a prepayment penalty equal to 2% of the unpaid balance as of the pay-off date. No prepayment penalty will be imposed (a) if this loan is refinanced by another loan with us; (b) after twelve (12) months; (c) if the loan is prepaid from the proceeds of any insurance; or (d) if we sue you.

LATE CHARGE. If you don't pay any payment in full in 15 days after it's due, you will also pay 5% of the unpaid amount of such payment.

SECURITY. There is a mortgage on your real estate, located at your address unless a different address is stated. You agree to give us a security interest in the real estate as described in the Mortgage/Deed of Trust.

PROPERTY INSURANCE:

A. YOUR OBLIGATION TO INSURE. You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

11-18-02 RE SI
1ST MTG W/PPP

RIB65252

*S44063D4DC94CEA9000RIB652520**SUFRAN          *          ORIGINAL

LOAN REPAYMENT AND SECURITY AGREEMENT (Page 3 of 3)

B. LENDER'S RIGHT TO PLACE HAZARD INSURANCE. You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the loan or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance and add the insurance charges to your loan. The Insurance charges will be added to the unpaid balance of the loan which accrues interest at the Contract Rate. The addition of the insurance charges due might increase the amount of your final installment. The cost of Lender placed hazard insurance might be higher than the cost of standard insurance protecting the property. The Lender placed insurance will not insure the contents of the property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

DEFAULT. If you don't pay on time or fail to keep any required insurance in force, or if permitted in the event of default under the Mortgage, (1) all your payments may become due at once and, (2) without notifying you before bringing suit, we may sue you for the entire unpaid balance of Principal and accrued Interest and (3) any judgment in our favor may include our reasonable attorney's fee and court costs as determined by the court. You agree that, should we obtain judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Federal law. You agree to pay interest on any judgment at the Contract Rate.

CREDIT REPORTING AND CUSTOMER INFORMATION PRACTICES. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

INSURANCE. Optional credit insurances and any required insurance disclosures are attached to this Agreement and are incorporated herein by reference.

ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS. The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference.

APPLICABLE LAW. This Loan is made under Chapter 14.1, Title 19 General Laws of Rhode Island, entitled "Lenders & Loan Brokers". This Loan is federal related loan authorized by section 501(a), Part A, Title V, Publuc Law 96-221, now known as 1735F-7(a) Title 12, United States Code (USL).

YOU HAVE RECEIVED A COMPLETE COPY OF THIS AGREEMENT AND THE TRUTH-IN-LENDING DISCLOSURES.

BORROWERS: _____ (SEAL)

_____ (SEAL)

_____ (SEAL)

WITNESS: _____

11-18-02 RE SI
1ST MTG W/PPP

RIB65253

*S44063D4DC94CEA9000RIB652530**SUFRAN * ORIGINAL

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

721700

| MORTGAGE | BK7134PG0158

EXHIBIT B

See DIS 7975-227

☐ IF BOX IS CHECKED, THIS IS AN OPEN-END MORTGAGE TO SECURE PRESENT AND FUTURE LOANS UNDER CHAPTER 25 OF TITLE 34 OF THE GENERAL LAWS.

THIS MORTGAGE is made this  2ND  day of  MARCH  , 20 06 , between the Mortgagor, MIGUEL SUFRAN, NOT STATED

(herein "Borrower"), and Mortgagee  BENEFICIAL MORTGAGE CO. OF RHODE ISLAND  , a corporation organized and existing under the laws of  DELAWARE  whose address is 1276 BALD HILL ROAD, UNIT 16, WARWICK, RI 02886 (herein "Lender"). The address listed above is for all purposes, including the receipt of written notices under chapter 25 of Title 34 of the General Laws.
The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ 334,713.62 , evidenced by Borrower's Loan Agreement dated  MARCH 2, 2006  and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on  MARCH 2, 2036  ;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ _____;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon, (including any increases if the contract rate is variable), the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of PROVIDENCE , State of Rhode Island:

THAT CERTAIN LOT OR PARCEL OF LAND WITH ALL BUILDINGS AND
IMPROVEMENTS THEREON, SITUATED ON THE WESTERLY SIDE OF
PARADE STREET IN THE CITY OF PROVIDENCE, COUNTY OF
PROVIDENCE AND STATE OF RHODE ISLAND, WHICH LOT IS LAID OUT
AND DELINEATED AS LOT NO. 48 (FORTY-EIGHT) ON THAT CERTAIN
PLAT ENTITLED, 'THE TRAINING GROUND PLAT SURVEYED AND
PLATTED BY CUSHING & DEWITT 1968', WHICH SAID PLAT IS
RECORDED WITH THE RECORDS OF LAND EVIDENCE FOR SAID CITY OF
PROVIDENCE IN PLAT BOOK 8 AT PAGE 23 AND (COPY) ON PLAT CARD
219. TAX MAP OR PARCEL ID NO.: 36-48

which has the address of  103 PARADE ST,  PROVIDENCE
                          (Street)                      (City)
Rhode Island 02909  (herein "Property Address");
          (Zip Code)

10-06-03 MTG                                                                                   RI001291
*S44D6304DC94MTG9000RI0012910**SUFRAN       *       ORIGINAL

-2-   BK7134PG0159

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note including any variations resulting from changes in the Contract Rate and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. Application of Payments. Unless applicable law or the Note provide otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal payable on the Note.

4. Prior Mortgages and Deed of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Contract Rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other

-3-   BK7134PG0160

terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage, if requested, at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a Court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, as provided in paragraph 12 hereof. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

10-06-03 MTG    *S44D63D4DC94MTG9000R10012930**SUFDAN*    ORIGINAL    RI001293

-4- BK7134PG0161

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security here under, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall discharge this Mortgage.

21. The Note provides for payment by Borrower of loan fees or "points." If the Note is prepaid in full, the loan fees or "points" shall not be subject to any refund.

22. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

THIS MORTGAGE IS MADE UPON THE STATUTORY CONDITIONS AND WITH THE STATUTORY POWER OF SALE.

Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument: $ 11,714.98
Origination - Discount Fees (Points)
As provided in R.I.G.L. Sections 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_____ _____
MIGUEL SUFRAN       -Borrower                      -Borrower

STATE OF RHODE ISLAND, _____KENT_____ County ss:

On this __2nd__ day of __MARCH__, 20_05_, in __WARWICK__
in said County, before me personally appeared __MIGUEL SUFRAN__
_____ each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be __HIS__ free act and deed.

JANE C. CARON, NOTARY PUBLIC
MY COMMISSION EXPIRES: 01/30/06

STATE OF RHODE ISLAND, _____ County ss:

On this _____ day of _____, 20____, in _____
in said County, before me personally appeared _____
_____ each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be _____ free act and deed.

_____

(Space Below This Line Reserved For Lender and Recorder)

10-06-03 MTG                                                                                    RI001294

*S44063D40C94MTG9000RI0012940**SUFRAN     X          ORIGINAL



Doc No: 00133809
Book: 7975 Page: 227

BENEFICIAL MORTGAGE CO OF RHODE ISLAND, THE UNDERSIGNED, HAVING RECEIVED FULL PAYMENT IN SATISFACTION OF THE INDEBTEDNESS SECURED BY A CERTAIN MORTGAGE, RECORDED IN THE RECORDS OF LAND EVIDENCE IN THE TOWN OF PROVIDENCE IN THE STATE OF RHODE ISLAND, IN BOOK NO. 7134 AT PAGE 158, HEREBY CANCELS AND DISCHARGES THE SAME, AND IT COVENANTS TO AND WITH THE PERSON MAKING SAID PAYMENT THAT IT IS THE PRESENT OWNER OF SAID MORTGAGE.

GRANTOR NAME AND ADDRESS:

MIGUEL SUFRAN
103 PARADE ST
PROVIDENCE, RI 02909

IN WITNESS WHEREOF THE SAID BENEFICIAL MORTGAGE CO OF RHODE ISLAND, HAS CAUSED ITS NAME TO BE SIGNED TO THESE PRESENTS BY ITS VICE PRESIDENT, THIS 7 DAY OF March, 2006.

BENEFICIAL MORTGAGE CO OF RHODE ISLAND

BY: _____
RITA S. AMIN - VICE PRESIDENT
ADMINISTRATIVE SERVICES DEPT.

STATE OF ILLINOIS
COUNTY OF Will

I, CHARLENE BROWN, A NOTARY PUBLIC IN AND FOR SAID COUNTY, IN THE STATE AFORESAID, DO HEREBY CERTIFY THAT, RITA S. AMIN PERSONALLY KNOWN TO ME TO BE THE VICE PRESIDENT OF BENEFICIAL MORTGAGE CO OF RHODE ISLAND AND PERSONALLY KNOWN TO ME TO BE THE SAME PERSON WHOSE NAME IS SUBSCRIBED TO THE FOREGOING INSTRUMENT, APPEARED BEFORE ME THIS DAY IN PERSON AND ACKNOWLEDGED THAT AS SUCH VICE PRESIDENT HE SIGNED AND DELIVERED THE SAID INSTRUMENT AS VICE PRESIDENT OF SAID CORPORATION, PURSUANT TO AUTHORITY SET FORTH IN RECORDER'S DOCUMENT NO. N/A WHICH IS VALID AND PRESENTLY IN EFFECT, AND AS THE FREE AND VOLUNTARY ACT AND DEED OF SAID CORPORATION, FOR THE USES AND PURPOSES THEREIN SET FORTH.

GIVEN UNDER MY HAND AND NOTARIAL SEAL THIS 7 DAY OF March, 2006.

OFFICIAL SEAL
CHARLENE BROWN
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 05/24/2008

CHARLENE BROWN - NOTARY PUBLIC
MY COMMISSION EXPIRES: 05/24/2008

PLEASE SATISFY AND RETURN TO THE FOLLOWING:
HPC
577 LAMONT RD
ELMHURST, IL 60126

72170000617211

Does not match on request

RECEIVED:
Providence
Received for Record
Apr 11, 2006 at 11:11:24A
Document Num: 00133809
Barbara Troncy
Recorder of Deeds